POWELL (ABBOTT v.). See Case No. 13.

---

## Case No. 11,355.

POWELL et al. v. The BETSY.

[2 Browne (Pa.) 335.]

District Court, D. Pennsylvania. Jan. 10, 1813.

SEAMEN'S WAGES — CAPTURE AND CONDEMNATION OF SHIP—SEAMEN AS WITNESSES.

[1. When the ship is captured and carried into a foreign port, the seamen are bound by their contract to remain with her until she is condemned in a tribunal of first resort. By such condemnation, however, the voyage is broken up, which subjects them to loss of wages, unless restoration ultimately takes place. They are not bound to remain after such condemnation, but they may do so at the master's request, awaiting the issue of an appeal; but this must be considered as under a new contract, and, if no terms are mentioned, it will be considered that they are the same as in the old contract.]

[2. Where a vessel bound from Philadelphia to a Danish port was captured by a French privateer, carried into a French port, and there condemned by the court of first instance, and afterwards, upon appeal, was ordered to be restored, and the proceeds of cargo sold were paid into the hands of the supercargo, except one-fifth thereof, which was retained as a pledge that the proceeds of certain colonial produce should be exported in the productions of France, *held*, that this was in legal effect a restoration such as would enable the seamen to maintain a libel for wages up to the time of the condemnation of the vessel and cargo in the court of first instance, although the agent of the owners, for reasons connected with a contemplated suit against the captors, had not yet in fact resumed possession of the ship.]

[3. Seamen joining in a common libel for wages have not a common interest in such sense as to render them entirely incompetent to tes-

---

[1] [Reprinted by permission.]

tify in behalf of each other, but in such cases the court is inclined to adopt the rule of the civil law, which requires at least two witnesses.]

"To the Honorable Richard Peters, Judge of the District Court of the United States in and for the Pennsylvania District.

"The libel of William Powell, Charles Flexon, John Harris, and George Middleton, late seamen of the ship Betsey, of Philadelphia (Guier & Diehl and others, owners, and John Risbrough, master), respectfully sets forth: That your libellants shipped at the port of Philadelphia on the twenty-ninth day of August, one thousand eight hundred and ten, on board the said ship Betsey, to perform a voyage from the said port to Keihl, in Denmark, for which said port the said ship sailed from the said port of Philadelphia on the thirteenth day of August. Your libellants being on board the said ship, the said ship, proceeding on the said voyage, was captured by a French privateer, and carried into Dieppe, in France, where she arrived on the nineteenth day of October in the year aforesaid. From the time of the arrival of the said ship as aforesaid until the fifteenth of May, one thousand eight hundred and twelve, your libellants remained, by order of the captain, at Dieppe, with the said ship, and during which time no condemnation of the said ship took place; and on the said fifteenth day of May in the said year your libellants were ordered to leave the said ship, no provision for their support being made or provided; and, with the consent of the said captain, they left the said ship, and embarked for the United States. Your libellants respectfully say that there is due to them, from the said owners and master of the said ship, a considerable amount of wages, the same to be allowed to them accordingly to the rate per month at which they severally shipped, up to the said fifteenth of May in the year one thousand eight hundred and twelve, a particular account of which said wages will be found in a certain schedule hereunto annexed, and which they pray may be taken as a part of this their libel; and your libellants further respectfully represent that they have been informed and verily believe that since their return as aforesaid to the United States the said ship Betsey and her cargo, or the proceeds thereof, have been restored to and have come into the possession of her said owners or their agents, or that a decree for the restoration has been made by the government of France. Your libellants therefore pray that the said master and owners of the said ship Betsey may be required to inform this honorable court, on their respective oaths or affirmations, whether the said ship Betsey has been at any time, and when, condemned as forfeited, and they have thus been deprived of the same: and also whether the said ship Betsey and her cargo have

been restored, or ordered to be restored, to the said owners, and when the said order for her restoration was made, and if the same have come into the possession of the said owners or their agents, and whether they are in possession of any and what information relative thereto.

"And your libellants further pray, that this honorable court will order such further proceedings in this case as may seem just and proper, and that by a decree of this court there may be adjudged to them their respective wages, according to the accounts stated and set forth in the schedule aforesaid. And they will, etc.

"(Signed)    Peters and Delany,
"Attorneys for Libellants."

"To the Honorable Richard Peters, Judge of the District Court of the United States for the District of Pennsylvania.

"The answer of William Guier and Thomas Diehl, of the city of Philadelphia, merchants, to the libel of William Powell, Charles Flexon, John Harris, and George Middleton, respectfully sheweth: That your respondents, saving to themselves all and all manner of benefit or advantage to be had from the manifold errors, uncertainties, and imperfections in the libellants' said libel contained, for answer thereto, or to so much thereof as is material and necessary for them to answer unto, they answer and say: That true it is, the libellants shipped as seamen on board the ship Betsey, at the time and in the manner, and sailed upon the voyage, set forth in the said libel. That, at the time of said shipment and commencement of said voyage, the said ship was owned by the respondent and Jacob Sperry, F. W. Sperry, and Elisha Kane. That true it is, that the said ship, while proceeding on her voyage, was captured by a French privateer, and carried into Dieppe, in France, where she arrived as is stated in the said libel. That the respondents do not admit to be true, as stated in the libel of the libellants, but do deny, that the said libellants remained by order of the captain at Dieppe, with the said ship, from the time of her arrival to the fifteenth day of May, one thousand eight hundred and twelve; that during that time no condemnation of said ship took place; and that on the fifteenth day of May in the said year the libellants were ordered to leave the said ship, no provision for their support having been made or provided, and, with the consent of the said captain, left the said ship, and embarked for the United States. But of these allegations the respondents pray that the libellants may be directed by your honor to make full and clear proof. And, further answering, the respondents answer and say that as they have been repeatedly informed, and fully believe, the said ship Betsey and her cargo have been condemned as forfeited and the owners deprived of the same; that said

condemnation was approved by the French emperor on the 9th day of January, A. D. 1812; and the respondents do aver that the said condemnation was made known to the libellants, as they are informed and believe, on or before the twenty-fourth day of January, one thousand eight hundred and twelve. And, further answering, the respondents answer and say that all the information they have received and all the knowledge they possess on the subject of a restoration of the said ship and cargo, and of the proceedings to obtain the same, has been derived from letters received by them from John Diehl, the supercargo of said ship, of which letters true copies are hereunto annexed, and which they pray may be taken, as a part of this, their answer. And your respondents do aver and say that the libellants are not entitled to have and receive the wages demanded by their said libel, because they say that by the capture aforesaid the said wages are lost to the libellants, or, if not wholly lost, that the right of the libellants to have and demand the said wages, or any part thereof, is, according to the due course of admiralty law and the practice of this honorable court, by reason of the said capture, suspended until the said ship, or the freight or earnings of the said ship, is fully and effectually restored to the owners thereof; and that upon such restoration, whenever this honorable court shall adjudge or decree that due proof thereof has been made, the said libellants would be entitled to their wages only to the time of the condemnation of said ship and their receiving notice thereof. And therefore the respondents pray that this honorable court will proceed no further with respect to the residue of said libel, praying that the court will adjudge the said libellants, the wages demanded; and that the libel of the libellants may be dismissed with costs, etc.

"(Signed)          Thomas Diehl,
          "For Self and William Guier.
                    "Chauncey Proctor,
                         "For Respondents.

"Thomas Diehl, one of the respondents, being duly sworn, saith that the facts set forth in the foregoing answer, are, to the best of his knowledge and belief, true.
"(Signed)          Thomas Diehl.

"Sworn to in open court November 26th, 1813.
"(Signed)          D. Caldwell,
          "Clerk of the District Court."

"Paris, 30th January, 1812.
"Messrs. Guier and Diehl—Gentlemen: Since mine of yesterday, I have obtained from the council of prizes the enclosed certificate, by which you will perceive the villainous and absurd plea made use of in the condemnation of the Betsy and cargo. I have not, nor do I believe that I shall be

able to obtain, a copy of the condemnation. I shall, however, do everything in my power to procure it, but, if I should not succeed, hope the enclosed certificate will be proof sufficient to enable you to recover from the underwriters. No news with regard to the subject of my letter of yesterday. Inclosed you have a copy of a letter from the director of the customs at Abbeville, to the receiver principal at Dieppe.
"Yours, &c., &c., &c.
"(Signed)          John Diehl."

"Custom House Imperial.
"Abbeville, 12th February, 1812.
"Sale of the Betsy.
"The Director of the Customs to M. M. Lagrine, Principal Receiver at Dieppe.
(Copy.)

"Sir: The emperor has ordered that the proceeds of the sale of The Betsy, condemned by a decision of the 9th of January, shall not be paid to the captors, but shall be provisionally placed in the case of ammortisement. The minister of marine who gave orders for the execution of the condemnation has been advised of the new intention of his majesty, and has, in conformity thereto, transmitted his instructions to M. the commissary of marine. They will not, however, charge anything in regard to the nankeens, except that the director general has observed to me, by his letter of the 10th inst., that he has ordered them to be detained in the public stores until a definite decision, and that they cannot be given to the captors, even if they should offer to reexport them.
"(Signed)          Boucher."

"Paris, April 16th, 1813.
"Dr. Brother: In my last to you, on the 25th of March, ultimo, I forwarded you a copy of a letter from the Duke of Bassano to M. Florrest, and it is with infinite pleasure I am permitted to inform you that I received yesterday the pleasing information of the restitution of the Betsey and cargo, by a decree of his majesty, on the 13th inst. I am not informed yet whether there are any or what are the conditions of this restitution, but shall probably be able to write you more fully in a few days; in the mean time, please have the goodness to inform those interested, of this desirable event. I shall be extremely at a loss to determine in what manner to remit the funds of G. and D., as well as my own, as the risk of shipping at this season of the year is very great, and probably insurance could not be effected. To remit at this moment to England, would afford but little profit, and probably not enough to cover the loss in drawing from the United States, as bills cannot be had here for less than twenty francs, for the pound sterling. In your last letter, you speak of remittance to Amsterdam, but as

no profit can be made in placing the funds there, and as I am informed the exchange in America, in favor of the drawer, is very trifling, I cannot conceive that measure would be practicable. It is very possible that I shall meet with considerable delay before I shall be able to receive the funds. You will probably have it in your power to give me particular instructions on that head, before I shall have it in my power to make the remittance. When you write I would advise you, by all means, to give your letters to some person who will put them in the post office, as our captains, in general, deliver them to the police, and not one in fifty ever comes to hand. In my letter to you, on the 20th October, 1812, I requested you to give me instructions relative to the manner you wished the ship employed in case of restitution. Am still, however, without any reply on the subject, but, as the Rattlesnake has arrived within a few days from Philadelphia, I hope I shall receive full instructions on that head, as also some information relative to the license.

"Yours, &c., &c.

"(Signed) John Diehl."

"Paris, 23d April, 1813.

"Messrs. Guier and Diehl—Gentlemen: I had the pleasure to address your Mr. J. Diehl on the 16th inst. advising him of the restitution of the Betsey and cargo, at which time had it not in my power to make known to him the condition of the said restitution, since which am informed that I shall be obliged to export the proceeds of the colonial produce in the productions of France, but in what articles am not yet instructed. The expences on this affair will be enormous, and the best invoices will not, most probably, produce more than 10 pr. cent profit, but when we consider the situation in which it was twice placed, first by a decision of the council of prizes, and secondly by a decree of his majesty which confiscated the whole to the benefit of the captors, the owners ought to think themselves very fortunate to receive the principal without profit or interest. I am extremely at a loss what to do with the ship, as the situation of the port of Dieppe renders it very difficult to escape the British cruisers, which are continually cruising in the channel, and unless I can succeed in getting her to some other port (in ballast), from which there will be less risk, I shall be extremely loth to ship the whole by her, especially in her present situation, and have some idea of taking off her upper deck, and rigging her into a brig, which will improve her sailing greatly, and render her chance of escaping much more probable. As I have reason to believe you are still interested in the ship, and as it is probable I shall be detained six months yet, expect your instructions, relative thereto: be particular to give your letters to some person who will put them in

the post office, or they will most probably never come to hand. I have had proposals to fit the ship out as a privateer, which might probably be done by giving one-half against the equipment. Your ideas on that subject. Relative to the segars, of your T. D., shall be obliged to sell them to the government, and am fearful the price will not be very advantageous, as they are not fond of paying dear for anything they buy. Notwithstanding the numerous arrivals from the United States, I am without a line from any of the owners for several months.

"Yours, &c.,

"(Signed) John Diehl."

"Inform Mr. Ralston and Nathans, that I shall be obliged to re-export their nankeens, as the government will not allow them to be sold in France, and that I shall do the best in my power for their interest."

"Paris, 23d June, 1813.

"Mr. Thomas Diehl—Dr. Brother: Since my last to you on the 16th April, which I forwarded by several different occasions I have received from the treasurer of the custom house here, four hundred and ninety thousand francs, less one fifth, which is held as a guarantee for the exportation, conformably to the decree of restitution, the difference between which sum and the amount of sales (say sixty-eight thousand francs) has been paid, without my knowledge or approbation, by the director of the marine at Dieppe, who was charged with the execution of the sale, for sundry expences, the legality of which, am about disputing, as I cannot conceive that such a sum can be composed entirely of just charges. It is also my intention to prosecute the captors for the loss sustained on the 183 boxes of sugars, damaged by their neglect, and it is the opinion of my attorney that I shall recover, as the decree of restitution orders that the cargo should be restored to me without depriving me of the right of prosecuting the captors for property destroyed. The segars belonging to you and Mr. Kintzing are not sold, nor have I it in my power to inform you what I shall be able to obtain for them, as I am not permitted to sell them but to the government, who have not yet said what price they will allow me. With regard to the nankeens, I lately applied to the minister of commerce for permission to transport them into Switzerland by land, where I could have obtained six or seven francs, but unfortunately it was refused me, and I am informed by the said minister that they must be exported from the port of Dieppe by sea. What I shall do with them I do not know. In my letter to G. and D. on the 23d April, ult. (forwarded by six different occasions), I have requested instructions relative to the ship. As to dispatch her in her present situation, she would stand but little chance to arrive in the United States, and to rig her into a

brig would cost so much that I do not like to undertake it without the particular instructions of the owners, but which, in my opinion, would be the best method that could be adopted, as the expence would not be more here than in the United States, and would render her, in case of the continuation of the war with England, a very valuable vessel. It would be imprudent to make any shipment at this season of the year, and shall defer doing anything to the ship for two months, in hopes of receiving the particular orders of proprietors. I shall not commence my shipments until about the commencement of November, and for the government of those concerned, shall give the earliest information possible of my operations, on their account. Inclosed I send you the first of Mr. Archibald Woodruff's draft, dated 22d inst. on M. Lodowick Sharpes, for four hundred dollars, which you will please to collect, and pay to Mrs. Diehl, or place it to the credit of my account with G. and D. or yourself, as circumstances may require.

"Yours, &c.,
"(Signed)          John Diehl."
"P. S. Make every necessary communication to those interested in this affair."

"Paris, 19th August, 1813.

"Mr. Thomas Diehl—Dr. Brother: Since my last to you on the 23d June, ult., I am sorry to be obliged to say that I have made but little progress toward the conclusion of my affairs here. I have not as yet taken possession of the ship or segars and nankeens, as in order to hold the captors responsible, if possible, for the damage which the ship and cargo has sustained by their fault, it is necessary that surveyors should be appointed by the court (before I take possession). Contrary to all reason and common sense, the tribunal at Dieppe, has refused to allow me a survey; this is, however, not extraordinary, as it is not so easy matter to obtain a judgment against privateersmen, when it is from privateersmen you are obliged to solicit that judgment. I have appealed to the court of Rowan, where I shall hear my fate in six or eight days. I shall regret much to be obliged to abandon this claim, inasmuch as I perceive more and more every day that the voyage will end in a loss to those interested. Relative to the settlement made by the commissary of marine at Dieppe, in which he has, as I have already advised, passed expences to the amount of sixty-eight thousand francs, I do not think it possible, but that I shall be able to obtain a deduction of at least thirty thousand francs, at all events, if I do not succeeed, it shall not be for want of attention or exertion. By a letter from the minister of commerce, some days since, I am informed that the exportations for the proceeds of the ship Betsey and cargo must consist of one-third in silks, and the other two-thirds of articles at my choice, which I shall endeavor to accomplish by the first of November, if possible, and it is my intention to make my exportations from Bordeaux or Nantz. If I can find suitable vessels,—that is to say, fast sailing schooners,—that will take freight, and of which I shall give the earliest information possible. It is with pleasure I have learnt, sometime since, the arrival in the United States of the Bellona, as she was the bearer of my first letter to you, after the restitution of Betsey and cargo, and have been for some time expecting particular instructions relative to the ship. Permit me to observe that it appears to me very extraordinary that I have not received a line from you since the 28th November, 1812; as I had written you several letters, the answers to which are, to me, of the greatest importance. In order to avoid any difficulty with Mr. George Smith, or his creditors, it would perhaps be well to cancel the policy which he underwrote on my commissions, even if you should be obliged to lose the premium. Yours, &c.

"(Signed)          John Diehl.
"P. S. Please to make every necessary communication to those interested, as have not written to the different concerns, nor shall I until it is necessary to advise them relative to insurance, as I have it not in my power to forward their respective accounts.
"(Signed)          J. D."

"To the Honorable Richard Peters, Judge of the District Court of the United States in and for the Pennsylvania District:

"The replication of William Powell, Charles Flexon, John Harris, and George Middleton to the answer of William Guier and Thomas Diehl, filed in this court to the matters stated and set forth in the libel of your replicants, respectfully sets forth: That your replicants, William Powell, John Harris, Charles Flexon, and George Middleton, saving to themselves all benefits and advantages arising, or which may arise, to them from the contradictions and imperfections in the said answer so manifest, do say that although it may be truly alleged and set forth in the said answer that the said ship Betsey and cargo were condemned by the order of the tribunal of prizes in France, yet the said ship, and almost the whole of the cargo, has since, by the order of the emperor of France, been directed to be restored, and the agents of the owners have, in consequence of such order, actually received a greater portion of the said cargo, or the proceeds thereof, and may at any time receive the residue thereof, as well as the said ship. Your replicants, in support of this allegation, beg leave respectfully to refer to the answer of the said Guier and Diehl, and the papers thereto annexed. And the said William Powell and others, in further reply to the matter set forth in the said answer, do aver and say that it is truly alleged in the said libel filed by them in this honorable court that they remained in Dieppe, in France, waiting the restoration of the said ship, by order of the captain thereof; and they do fur-

ther say that after the capture of the said ship, and her arrival in Dieppe, under the charge of her captors, and before your replicants left the said ship, as stated in their libel, they severally and together made frequent application to the master of the said ship for his permission to return to the United States, which applications were always without success, and this as well as all the matters stated and set forth in the said libel, as well as in this replication, they are ready to make out to the satisfaction of your honor by proof.

"Your replicants do therefore pray, that inasmuch as it is shown and fully proved, by the answer of the said Guier and Diehl, that the said ship Betsey and her cargo, have been restored, and are either in the possession of the agents of the said respondents, the said Guier and Diehl, or may be taken into their possession at any time, that your honor will decree the payment of so much of the wages of your replicants as are due to them up to the period, when notice of the condemnation of the said ship was given to your replicants, as set forth in the said answer of the said Guier and Diehl, viz.: The twenty-fourth day of January, one thousand eight hundred and twelve; and, as to the residue of their wages, they pray that on your replicants making the proof aforesaid the payment of the same may be decreed to them.

"And they will, &c.

"(Signed)        R. Peters & W. Delany,
                          "Proctors."

PETERS, District Judge. The ship sailed from Philadelphia, after the libellants had shipped as mariners, on the 30th of August, 1810, bound for Kiehl, in Denmark; she was captured by a French privateer, and carried to Dieppe, in France, where she arrived on the 19th October, ensuing. The libel states that they remained on board, by order of the captain, at Dieppe, until the 15th of May, 1812, during which time no condemnation took place; on the said 15th of May, they were ordered to leave the ship, no provision for their support having been made, and, with the consent of the captain, embarked for the United States. They demand wages up to the time of their leaving the ship.

They allege that this ship and cargo, or their proceeds, were restored and came into possession of the owners, or their agent, and pray that the master and owners, may be required on oath, to inform the court: 1st. Whether the ship had been, and when, condemned? 2nd. Whether the ship and cargo had been restored? And when the order for the restoration was made? The respondents agree in the facts of shipment, capture, and carrying into Dieppe; but they deny that the libellants remained in and with the ship until the time stated, to wit, the 15th of May, 1812, and pray that they may be directed to make full proof of this allegation. They allege that the ship and

cargo were condemned as forfeited, and the owners deprived thereof. This condemnation they allege was made known to the libellants, as they are informed and believe, on or before the 24th day of January, 1812. They annex true copies of letters from the supercargo, John Diehl, containing all the information they possess. They further allege that the wages were lost by condemnation, or at least their right of recovery suspended until complete restoration, and even then the libellants are only entitled to receive wages to the time of condemnation. The libellants reply that although it may be true that the ship and cargo had been condemned by order of the tribunal of prizes in France, yet the ship, and almost the whole of the cargo, has since, by order of the emperor, been restored, and the agents of the owners have actually received the greater portion of the cargo, or its proceeds, and may at any time receive the residue thereof, as well as the ship. For proof whereof, they refer to the answer of the respondents and the papers annexed thereto. They persist in their allegation that they remained at Dieppe, by order of the captain, waiting the restoration of the ship, and that they made repeated applications to the master for leave to return home, without success. They finally pray that wages be paid up to the period when it appears by the respondents' own showing that notice of the condemnation was given, to wit, the 24th of January, and that they may be permitted to make proof as to the residue, and on such proof being made the same may be decreed, &c.

By the letters from the supercargo, Diehl, it plainly appears that, after many delays and difficulties, the ship and cargo, or its proceeds, were directed to be restored, and that a sum equal to about four-fifths of the proceeds of the cargo has actually been paid into the hands of the supercargo. The residue is retained as a pledge that the proceeds of the colonial produce shall be exported in the productions of France. The ship, it also appears, might at any time be taken possession of by the supercargo. But he did not choose to take such possession until certain arrangements (in which he found difficulties) were made to enable him to sue the captors for damages, so that there is no doubt in my mind that, so far as relates to the mariners, who are not concerned in the effect of any ultimate measures the owners or their agents may choose for their own objects to adopt, the restoration of the ship and cargo, or the proceeds of the latter, are to be considered as complete, to all legal intents. I therefore have no hesitation in decreeing, that the wages, up to the 24th of January, 1812, be paid with costs. The additional claim for wages to the 15th of May, 1812, must remain for further proof. The seamen were bound to remain with the vessel until the first decree for condemnation, under their old contract, and there is no

doubt of their having so remained. But I have always considered the first contract at an end, when the vessel is condemned in the tribunal of the first resort, because the voyage is then broken up by a misfortune, which subjects the seamen to loss of wages; if restoration does not ultimately take place. The seamen are not bound to remain longer than the time of notice of the first decree, at the risk of further loss. But they may remain at the master's request, waiting for the issue of an appeal. This is under a new contract entered into by both parties, and if the request to remain be general, that is, without prescribing new terms, it must be understood, that their abidance is under the terms of the old contract. I need not, therefore, consume any time in showing that proof of this new engagement must be as full as that for the establishment of the first contract. In this new contract, as well as in the old one, every man's agreement is distinct; though all are named in the same instrument.

I do not know that the admiralty law is different in the principles of evidence from the common law, which has borrowed, without acknowledging its obligations, many of its best principles from the civil codes of ancient nations. When I endeavored to establish some rules on the subject of admitting seamen to be witnesses for each other, I had no particular view to the creation of a difference between the admiralty and common-law principles in this regard; yet the civil law requires two witnesses in cases where the common law is satisfied with one. The practice of civil law courts is indubitably most congenial with admiralty and maritime proceedings. On this account I shall think myself warranted in cases wherein I think it necessary for the objects of justice to adopt the civil law rule, though I have not generally attended to it. In the Admiralty Decisions.—page 211, vol. 1 [Thompson v. Philadelphia, Case No. 13,973].—the general principles I laid down on this subject will appear. But I do not perceive in them anything bearing particularly on this case. A seaman is produced (not one joining in the libel) to prove the new or supplemental engagement by the captain of the Betsey with the mariners, inducing their stay at Dieppe, after the condemnation. It is not proved, on the contrary, it is denied, that this mariner was collusively omitted in the libel, for the purpose of giving evidence, or under an expectation of being served by those mentioned in the libel, when he shall sue for his wages. This could not be permitted; nor have I ever allowed mariners, joined together in a libel, to be witnesses for each other. At common law, persons joined in a suit, such as trespass, &c., for the purpose of excluding them as witnesses, have nevertheless been admitted. But seamen voluntarily connect themselves in a libel, and do not stand on the like ground. But where many enter into a contract, not joint, but several,

as all ship's articles are, I see not that one mariner may not be a witness, to prove the contract of his shipmate, when unconnected in a suit brought for the recovery of wages, according to the strict principles of law. I do not recollect the point having before this time been made. In common law courts, suits are always separate, on the claims of the mariners, who have not the privilege there of joining in the same suit, which they enjoy in maritime courts. The judges of common law courts do not feel the embarrassments of one who must decide both on competency and credit. On the latter, the jury have the exclusive decision. I have therefore reluctantly admitted one mariner in any case to prove the contract of another, though I believe it has been done. In 3 Johns. p. 513 it is truly said by Chief Justice Kent that "where seamen having a common interest in the point in contest are admitted as competent witnesses, the fact would, no doubt, work strongly against the credit of their testimony." Of this opinion I have always been. Having to decide on their credit, I have avoided, rather than pointedly refused, admitting their testimony, to save myself the pain of disregarding their allegations on oath, in cases (and they are too common) in which I deem them careless, or worse. I know not how to relieve myself where points of this sort are pressed on me (and counsel by so doing may serve a turn which may reverberate on themselves in some future cases) but by establishing a rule that the civil law practice, of two witnesses, shall in the case in question, and others similar, be adopted; and I request that this may be considered as the practice here. I do not deem the interest of the seamen in the present case so connected as that some may not have separate circumstances attending their claims. Part of the original crew may be retained, and others discharged. Whatever the predominant interests may be, it is neither greater nor less, in this supplemental or protracted contract, than that which prevailed in the original agreement, or shipping articles; and I think that, as it regards their contracts, their interests may be more correctly styled similar than common. I admit the seamen as competent, but I shall expect further testimony. For the satisfaction of my mind on the point of credit, no specific rule can be established in any case.

I have considered the certificates of Captain Risbrough, exhibited in this case, which strongly imply that the seamen were retained by his consent, and at his request. It is scarcely probable that they would have remained if he had discharged them and assisted in the means of their return, as he did when the minister of the United States would no longer permit them to be supported at public expense. But there is no direct proof of this part of the case.

Charles Flexon is certified by Captain Risbrough to "have waited the decision of the said ship, until the 6th of May, 1812, when

he was ordered by Joel Barlow, American minister in Paris. to embark for the United States. as he could not be supported at the expense of the American government any longer. Dated at Dieppe, May 15th, 1812." John Harris has a similar certificate. George Middleton has also a like certificate. I see no such paper relating to William Powell. If the seamen were detained by the consent of the captain, they should have been supported at the expense of the ship; but it appears as soon as their support by the government of the United States or its agents was withdrawn, the sailors were ordered to return. This creates an ambiguity in the certificates, and requires explanation, which either party may give.